## ALEXANDER vs. SCHREIBER, use of, &c.

1. The covenants implied by the words "grant, bargain and sell," in a deed of conveyance, under our statute, are separate and independent of each other.

2. A general warranty is only limited by a special, where the two are inconsistent.

## APPEAL from St. Louis Circuit Court.

GANTT & HAMILTON, *for Appellant, insist:*

1. That admitting the words of the statute to have the force of a general covenant of seisin by indefeasible title, the existence of an outstanding incumbrance is no breach before foreclosure or payment. 16 Johns., 254; 7 Johns., 380, 381; 5 Pickering, 217; 7 Johns., 471; 11 Johns., 538; Doug., 610; 2 Burr, 979.

2. Oyer being given, it was manifest that the deed contained an *express* covenant to warrant and defend. This express covenant abrogated all implied covenants. 11 Johns., 122; 2 Caine's R., 192; 2 Bos. & P., 26; part IV of Coke's Rep., 80, 86; Kent vs. Welch, 7 Johns., 258; 4 Dallas, Benden vs. Fromberger, 440. (This case is directly in point, being upon a similar statute with ours.)

3. That the notice of special matter filed with the general issue is in every respect similar to a plea alleging the facts whereof notice is given. To sustain a motion to strike it out, therefore, was equivalent to sustaining a demurrer to a plea alleging the same facts. But the facts stated in the notice were such as constituted a good defence to the action, and defendant should have been permitted to give evidence thereof. See 4 Dall., 438, 440; 2 Wend., 517; as to the first point.— As to the second, see 9 Cow., 271; 2 John. 595; Pemberton vs. Staples, 6 Mo.R., 59; 16 John. R., 254, 128; 7John., 380, 381; 5 Pickering, 217; 4 Mass., 627. The title acquired by Alexander before the commencement of the suit, was complete, and vested in Schreiber by way of estoppel. 9 Cow., 271; Rev. Co. of Mo. for 1835, page 119, § 3.

4. When, upon demurrer to the pleas of defendant, after oyer given, the whole record was before the court, it became manifest that instead of a general and express covenant of seisin, the grantor had (leaving out of view for the present the question of the abrogation of this implied covenant by that which was expressed) only covenanted against the defeasibility of his estate by acts or incumbrances done or suffered by him or those claiming under him. See the 4th vol. of Kent's Com., 473, 474; Gratz vs. Ewalt, 2 Binney, 95; 4 Dallas, 440, and see also the statute of 1835 of Mo., wherein if the first covenant or covenant of seisin indefeasible, &c. were a *general covenant,* the second or the covenant against incumbrances by grantor, &c., would have nothing to operate upon.

PRIMM & TAYLOR, *for Appelle, insist:*

1. That the words of conveyance used in the deed from Alexander to Schreiber are *express* covenants, not *implied* covenants.

2. That one of these covenants is that Alexander, at the time of the execution of that deed, was *seized* of an *indefeasible* estate in *fee simple* of the lots in question.

3. That a grantee in a deed containing such words of conveyance, can, in a suit against the grantor, declare in *express words* that the grantor *covenanted that he was seized of an indefeasible estate,* &c. Rev. Laws of 1835, pp. 119 and 120, sec. 7.

4. That such covenant can be broken, the very instant it is made, and, in the present case, was so broken, giving an immediate right of action to Schreiber, and that, too, without waiting for an eviction. Greenby vs. Wilcocks, 2 J. R., p. 1; Hamilton vs. Wilson, 4 J. R., p. 72; Abbott vs. Allen, 14 J. R., p. 248; Lott vs. Thomas, 1 Pennington's Rep., p. 407; Chapman vs. Holmes, 5 Halsted Rep., p. 20; Stewart & Fine vs. Drake, 4 Halsted, p. 139.

5. That such a covenantee can bring his action, although he may never have been disturbed or molested in his possession, and the vendor cannot shelter himself under a title acquired subsequently to the bringing of the action. Morris vs. Phelps, 5 J. R., 49.

6. That the covenant of general warranty contained in the deed from Alexander to Schreiber cannot *control* the *express* covenants, which the words *"grant, bargain and sell,"* used in that deed convey, but must be auxillary to those covenants. Simonds vs. Beauchamp, 1 Mo. Rep., 420, before cited. Two warranties made by and to the same persons and in the same instrument, the one express, the other implied, may stand together. Burton on Real Property, above cited, p. 186.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of covenant upon a conveyance of some lots in St. Louis, in which the words " grant, bargain and sell" were used, as well as the usual covenant of general warranty. The statutory covenant contained in the words " grant, bargain and sell" was declared on as a covenant of seizin of an indefeasible estate in fee simple against all the world, and a breach of this covenant is alleged by reason of an unsatisfied mortgage upon the lots conveyed at the time of the conveyance.— The plaintiff, upon the trial, obtained a verdict, and had a judgment for the purchase money of the lots, with interest, &c. A motion in arrest of judgment was made and overruled.

The only question arising on the record, although others have been discussed at the bar, is upon the construction which the Circuit Court gave to the 24th section of the act concerning conveyances. Rev. Co. '45, p. 221. That section, as it now stands in the revision of 1845, declares that the words " grant, bargain and sell" shall be construed to be the following express covenants, unless restrained by express terms:— " First, that the grantor was, at the time of the execution of such conveyance, seized of an indefeasible estate in fee simple in the real estate thereby granted; second, that such real estate was, at the time of the execution of such conveyance, free from incumbrances done or suffered by the grantor, or any person under him; third, for further assurances of such real estate to be made by the grantor and his heirs to the grantee and his heirs and assigns." These covenants, the act declares, may be

sued upon in the same manner as though they were expressly inserted in the conveyance.

The first act on this subject in our statute book was passed in 1804 by the Governor and Judges of the Indiana Territory. That act declares that "in all deeds conveying an estate of inheritance, the words " grant, bargain and sell" shall be adjudged an express covenant to the grantee, his heirs and assigns, that the grantor was seized of an indefeasible estate in fee simple, freed from incumbrances done or suffered from the grantor, (except the rents and services that may be reserved,) as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deed." That act further declared, "that in any action upon such covenant, the breaches might be assigned as if they were expressly inserted."

In the revision of 1825, the law on this subject was this : "It is enacted that the words "grant, bargain and sell" shall be adjudged express covenants to the bargainee or grantee, his heirs and assigns, for the bargainor or grantor, for himself, his heirs, executors and administrators, that the bargainor or grantor was, at the time of the execution of such deed, seized of an indefeasible estate in fee simple in and to the lands, tenements and hereditaments thereby granted, bargained and sold, and that the same was then free from incumbrances done or suffered from the bargainor or grantor, his heirs and assigns, and all claiming under him; and also for further assurance thereof to be made by the bargainor, his heirs and assigns, unless the same be restrained," &c.

It is at least curious, if it be not instructive, to notice the mutations which this provision has undergone. It is not easy to say whether these changes have been the result of accident, mistake or design.

The act of 1804 is identical in terms with the statute of Pennsylvania of 1715, which latter statute is obviously borrowed from the 30th section of the Statute 6 Anne, c. 35. The Pennsylvania statute has been construed as limiting the covenant of seizin to the acts of the grantor and those claiming under him. Lessee of Gratz vs. Ewalt. In Alabama a similar construction was given to a similar statute. Roebuck vs. Dupuy, 2 Ala. R., 538.

It will be observed that the act we are now called upon to construe is essentially different from the act of 1804. The statute now in force, and which has been in force since the revision of 1825, with slight alterations, declares that the covenants therein specified shall be considered as express covenants, and as though they were in terms inserted in the

deed.   The only question, then, which can be raised upon the phraseol-
ogy of this statute is, whether the second covenant therein specified, which
is against incumbrance done or suffered by the grantor, must be construed
to limit the first and third covenants, which are unlimited in their terms.

In the case of Browning vs. Wright (2 Bos. & Pull., 14) there was a
special warranty against the acts of the grantor and his heirs, which was
followed by a covenant that the grantor, notwithstanding any thing by
him done to the contrary, was lawfully and absolutely seized of the land
conveyed; and a further covenant that he had good right, full power and
authority to convey *in manner aforesaid.*   Lord Elson considered the
question in that case to be, not whether a special covenant would res-
train a general one, but whether the covenant of good right and title to
convey, was in fact a special or general covenant.   He therefore relied
upon the words "*in manner aforesaid*," to show that this covenant was
in fact limited by the expressions used in the preceding covenant, "for
and notwithstanding any thing by him done to the contrary," and held
the covenant for good right and title to convey as a special covenant
against the acts of the grantor alone.

The case of Nevins vs. Munns, (3 Lev.  46) cited in the argument of
the case of Browning vs. Wright, seems to have been determined on a
similar principle.   In that case it is stated there were four covenants;
first, for seisin in fee; second, for right to convey; third, against incum-
brances; and fourth, for quiet enjoyment.   The first, third and fourth
were expressly restrained to the acts of the grantor, his father and grand-
father, and the second was unlimited.   Three of the judges, in opposition
to North, C. J., held that the first and second covenants, though distinct
and several, were synonymous; and therefore, as the grantor had first
covenanted against his own acts, it could not be intended that he should
immediately afterwards, in a covenant to the same effect, covenant against
all the world.

In Hepse vs. Stevenson, (3 Bos. & Pull., 565) this subject was much
discussed, and Lord Alvanly considered the result of the cases to be,
that however general the words of a covenant might be, if standing alone,
yet if, from other covenants in the same deed, it was plainly and irresist-
ibly to be inferred that the party could not have intended to use the words
in the general sense which they imported, the court would limit the ope-
ration of the general words.   But because a covenant was unnecessary,
it was not therefore considered inconsistent.   So that in that case where
there was a covenant that the defendant had good right, full power and

absolute authority to convey, and also that he had not, by any means directly or indirectly, forfeited any right or authority he ever had or might have had over the property in question, it was held that the former covenant was not restrained by the latter.

So, in Gainesford vs. Griffeth (1 Saun., 59) there was an assignment of a lease, in which it was covenanted that it was then a good and indefeasible lease, and that the assignee should quietly enjoy the land, &c., during the residue of the term, without any let or disturbance from the assignor, his executors, &c.; and it was held that the general covenant of a good and indefeasible lease was not restrained by the covenant for quiet enjoyment, which was restricted to acts of the covenantor.

In Smith vs. Compton and others, a case decided in 1832, (3 Barn. & Ald., 189) an indenture was made reciting a power in the covenantor to convey the land to such uses as he should designate, and the covenants were that the said power to appoint was then in full force and unexecuted; and also that the covenantor then had in himself good right, title, power and authority to limit and appoint, and to grant, bargain, sell, &c. the premises to the uses designated; and further, that the premises should be held and enjoyed to the said uses without the let or interruption of said covenantor or any claiming under or in trust for him, and also for further assurance by the said covenantor and all so claiming. The court held that the second covenant was absolute for good title against all persons, and not qualified by reference to the other covenants. This opinion was chiefly placed on the ground that there were no words, either in the second covenant itself or in the preceding or subsequent ones, to connect it with them. Lord Tenderden said, " there is, with one exception, (alluding to the case of Milner vs. Horton, McClel., 647) no case mentioned where a general covenant has been held to be qualified by others, unless in some way connected with them."

In Howell vs. Richards, (11 East., 633) there were several covenants in a deed of release; first, that for and notwithstanding any act by them or any of them done to the contrary, they had good title to convey, &c; second, that they, or some or one of them, for, and notwithstanding any such matter or thing as aforesaid, had good right to full power to grant, &c.; *third, and likewise,* that the releasee should peacably and quietly enter, hold and enjoy the premises granted without the lawful let or disturbance of the releasors or their heirs or assigns, *or for or by any other person or persons whatsoever,* It was held that the generality of the covenant, for quiet enjoyment, was not restrained to the acts of the re-

leasors by the qualified covenants for good title and right to convey, for and notwithstanding any act done by the releasors to the contrary. Lord Ellenborough remarked, that the covenant for quiet enjoyment was materially different from the covenants for title. An eviction is necessary to entitle the covenantee to an indemnity in case of a breach of the former covenant, and against this, a party may be willing to covenant, whether it arises from an act of his own or that of a stranger, when, at the same time, he may not covenant to stipulate for a perfect and indefeasible title. "He may suspect," says the C. J., "or even know, that his title is in strictness of law in some degree imperfect, but he may, at the same time, know that it has not become so by any act of his own; and he may likewise know that the imperfection is not of such a nature as to afford any reasonable chance of disturbance whatever to those who should take under it; he may therefore very readily take upon him an indemnity against an event which he considers as next to impossible, whilst he chooses to avoid a responsibility for the strict legal perfection of his title to the estate, in case it should be found at any future period to have been liable to some exception at the time of his conveyance. He may have a moral certainty that the existing imperfections will be effectually removed by the lapse of a short period of time, or by the happening of certain immediately then impending or expected events of death or the like; but those imperfections, though cured so as to obviate any risk of disturbance to the grantee, could never be cured by any subsequent event, so as to save the breach of his covenant for an originally absolute and indefeasible title. The same prudence, therefore, which might require the qualification of one of these covenants, might not require the same qualification in the other of them; affected as it is by different considerations, and addressed to a different object.

In Benden vs. Fromenger, (4 Dall. R., 436) the deed in question contained the words "grant, bargain and sell," which, in Pennsylvania, imply a covenant only against the acts of the grantor; also, a covenant that the grantor was seized of a good estate in fee simple, subject to no incumbrances but a certain ground rent, and a covenant of special warranty. The question was whether the special warranty restrained and limited the general covenant, and the court held that it did not. Tilghman, C. J., said, " it is certain that the special warranty and more is included in the general one. It is an inaccurate mode of conveyancing, but there is no absurdity or contradiction in making one covenant against yourself and your heirs, and another against all mankind."

· In Funk vs. Ex'rs of Bechtoll, (11 Serg. & R., 109) a somewhat similar question arose. This was an action of covenant upon the covenant implied by the words "grant, bargain and sell"—there being in the same deed a covenant of special warranty—and it was held that the covenant of special warranty did not restrain the implied covenants.

It is apparent from these cases, to which we have briefly referred, that whilst it is conceded that a special covenant will restrain a general one, where the two are absolutely irreconcilable, yet the courts have inclined very much to let both stand. A covenant is to be construed most strongly against the covenantor, and in giving effect to the intention of the parties to an instrument of conveyance, the courts have kept this principle in view. Where the particular covenants and the general covenants are entirely independent of each other, and of a different character, they will all stand. The statute enumerates the three covenants which the words "grant, bargain and sell" are declared to imply, as distinct and independent covenants. The second may be superfluous, but it *does not* therefore limit the first, which is independent of and not inconsistent with it.

The other Judges concurring, the judgment is affirmed.